JOHNSON et ux. v. GRIFFITHS & CO. et al.

(Court of Civil Appeals of Texas. Feb. 25, 1911. Rehearing Denied March 18, 1911.)

1. EVIDENCE (§ 513*)—OPINIONS—BUILDING OPERATIONS.

A witness having qualified as an expert building contractor could give an opinion as to the quality of lumber used in a house, and whether it complied with the specifications.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2317; Dec. Dig. § 513.*]

2. MECHANICS' LIENS (§ 280*)—EVIDENCE—ADMISSIBILITY.

In a suit to establish a mechanic's lien against a married woman's separate property, it was not error to admit her testimony that she received notice of the lien and that her husband acted as her agent respecting it.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 280.*]

3. MECHANICS' LIENS (§ 166*) — WHEN ATTACHES.

A mechanic's lien attaches when the steps prescribed by the statute are followed.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 297; Dec. Dig. § 166.*]

4. CONTRACTS (§ 284*)—BUILDING CONTRACTS—AUTHORITY OF ARCHITECT.

Where a building contract made the architect the owner's agent, he could consent to a substitution of different brands of paint of the same quality.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 284.*]

5. EVIDENCE (§ 501*) — OPINIONS — NONEXPERTS.

Nonexperts' opinions are admissible if the witnesses give the facts upon which the opinions are based, but to render such evidence competent facts must appear to be such as would enable witnesses to arrive at an intelligent opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2292–2305; Dec. Dig. § 501.*]

6. EVIDENCE (§ 501*) — OPINIONS — NONEXPERTS.

A nonexpert could not give his opinion as to the cost of remedying defects in a building and as to the value of the building, if it had been constructed according to plans and specifications and as actually constructed, where he did not state facts sufficient to enable him to arrive at an intelligent opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2292–2305; Dec. Dig. § 501.*]

7. HUSBAND AND WIFE (§ 18*)—WIFE'S ANTENUPTIAL DEBTS—HUSBAND'S LIABILITY.

A husband is not personally liable on a building contract made by his wife before marriage for the benefit of her separate estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 112–120; Dec. Dig. § 18.*]

Error from District Court, Dallas County; E. B. Muse, Judge.

Action by Griffiths & Co. against M. W. Johnson and wife and action by Sumner & McCreight against M. W. Johnson and others consolidated. From the judgment, Johnson and wife bring error. Reformed and affirmed.

W. J. J. Smith and K. R. Craig, for plaintiffs in error. White & Sergeant, W. H. Flippen, and T. B. McCormick, for defendants in error.

BOOKHOUT, J. This is a suit instituted by Griffiths & Co. October 9, 1908, against Mrs. M. W. Johnson, formerly Mrs. E. M. Bounds, and M. W. Johnson, her husband, joined pro forma, upon four promissory notes in the sum of $2,075 each, dated December 9, 1907, and payable one, two, three, and four years after date, respectively, payable to the order of L. C. McAllister and J. M. Sides, bearing interest at the rate of 8 per cent. per annum from date, interest payable semiannually as it accrues, and stipulating for 10 per cent. attorney's fees; and each note further providing for a mechanic's lien upon certain land, and each note further stipulating that failure to pay said note or any installment of interest when due should, at the election of the holder thereof, mature the same, and that said note should at once become due and payable and subject to foreclosure proceedings under said mechanic's lien. The notes were executed by Mrs. E. M. Bounds. A contract for mechanic's lien was at the same time executed by Mrs. Bounds upon a certain lot situated in the city of Dallas, Tex., being 100x210 feet off the S. W. portion of a one-acre tract conveyed to E. M. Bounds by J. N. Cochran, the field notes of which are set out in the lien and plaintiffs' petition. Subsequent to the execution of the notes and lien, Mrs. Bounds married the plaintiff in error, M. W. Johnson. The plaintiff alleged default in the payment of the first installment of interest on the first note, and that it had elected to declare the entire debt due, and prayed for a judgment for a foreclosure of the lien on the property referred to. It was alleged that the notes had been indorsed and transferred by L. C. McAllister and J. M. Sides to Griffiths & Co., without recourse. Plaintiff prayed also for the recovery of $112.50, with interest, for insurance premium paid by plaintiff on the property, and alleged that said notes were given in consideration and in part payment for the erection of a two-story, frame, shingle

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

roof building, to be erected by McAllister & Sides at their own expense and cost, they to furnish all the material and build the same at their own expense as per an existing contract and specifications entered into by and between said Mrs. E. M. Bounds, then a feme sole, and the said McAllister & Sides, said residence to be erected upon the lot above referred to.

The defendants, plaintiffs in error, pleaded in abatement that the suit was premature, for that the same is a suit upon certain promissory notes given by defendant Mrs. M. W. Johnson, payable to the order of L. C. McAllister and J. M. Sides, for the erection and completion of a certain residence in the city of Dallas, Tex., according to the contract and specifications therefor made between the said Mrs. M. W. Johnson and the said McAllister & Sides; said notes therefor being transferred by said McAllister & Sides to Griffiths & Co. That had plaintiff credited certain sums which, it is alleged, should have been credited upon said notes and interest thereon at the time this suit was instituted, there would have been nothing due and owing to said plaintiff, and nothing at the time to justify plaintiff in declaring the whole sum due and payable, and that in addition thereto, in order to prevent said suit, the defendants tendered and offered to pay plaintiff all interest due and owing upon said notes at and before the time this suit was instituted; wherefore defendants say that there has been no default upon the part of defendants to authorize the plaintiffs to declare the whole sum due and payable. The plea in abatement was sworn to.

This plea was followed by a general denial and also by the plea of failure, or partial failure, of consideration by reason of defects in the house constructed, failure to build the house in conformity with the plans and specifications, and departure in the plans and specifications in the matter of material and workmanship, itemizing each particular in which the contract was violated or not complied with in the erection and finishing of said house; defendants alleging that the notes were given in consideration that McAllister & Sides were to furnish all material and build and erect and fully complete the residence, and that said notes were executed and delivered, with the mechanic's lien on the lot described in plaintiff's petition, as additional security; and that said notes were by McAllister & Sides transferred to Griffiths & Co. before any of said work had been done or materials furnished, with the understanding and agreement at the time made between said McAllister & Sides and T. W. Griffiths that said T. W. Griffiths should furnish the lumber and certain portions of the materials for the construction and completion of said house, and be charged to McAllister & Sides periodically as the work progressed according to the contract in the sum of $8,300, and that when said McAllister & Sides had com-

pleted said residence according to the contract and specifications, then the said notes should be in full force and effect for the full amount; that plaintiff's right to demand and defendants' liability on said notes was dependent upon the erection and completion of said house according to the contract and specifications therefor, and not solely upon plaintiff's payment of the amount of said notes to McAllister & Sides.

Defendants further alleged that plaintiff did not pay the full amount of $8,300 to McAllister & Sides, but retained and still has in his hands $1,263. Defendants claimed $5 per day after March 1, 1908, for failure to complete said house on that day as stipulated in the contract. Plaintiff filed a supplemental petition, setting out a statement of account between McAllister & Sides and defendants, as well as between plaintiff and defendants, attached thereto as Exhibit A, the contract between Mrs. E. M. Bounds and McAllister & Sides, giving a mechanic's lien on the property, as also the contracts and builder's agreement between J. M. Sides and L. C. McAllister for the erection of the house. To this defendants filed a supplemental answer.

Sumner & McCreight also filed a suit against McAllister & Sides and M. W. Johnson and Mrs. M. W. Johnson for the recovery of $356.55 for material and labor furnished to McAllister & Sides by plaintiffs in the erection of the building by McAllister & Sides for the defendants Johnson, alleging that plaintiffs had filed in the office of the county clerk of Dallas county an affidavit and bill of particulars fixing a lien upon the property described, being the same property hereinabove referred to upon which the building was to be erected, and praying for a judgment against McAllister & Sides and the defendants M. W. and Mrs. M. W. Johnson for the recovery of the debt and foreclosure of the lien on the property. Plaintiffs attached as an exhibit the contract between Mrs. E. M. Bounds and McAllister & Sides, and also a statement of their account, showing a balance of $356.55. To this petition the defendants pleaded general denial and a plea of failure of consideration, and further answered that at the time plaintiffs attempted to fix a mechanic's lien on the property, defendants were not indebted to McAllister & Sides in any sum, and denying plaintiff's right to recover anything in the way of a judgment or to have any lien established or foreclosed on the property. In that suit McAllister & Sides answered, pleading over against defendants M. W. and Mrs. M. W. Johnson the sum of $2,202.40, with an itemized statement of extras on the building attached as Exhibit A. By agreement of all parties, the suit of Sumner & McCreight against McAllister & Sides et al. was consolidated with the cause of Griffiths & Co. v. M. W. and Mrs. M. W. Johnson.

The case was tried before a jury and sub-

mitted on special issues, and judgment entered upon the verdict of the jury. By the terms of the judgment so entered, the plaintiff recovered a personal judgment against M. W. Johnson and his wife, Mrs. M. W. Johnson in the sum of $10,682.78, together with a foreclosure of the lien on the property, with an order for execution over against the defendants for any deficit that might be upon a sale of the property; also a personal judgment in favor of Sumner & McCreight against the defendant M. W. Johnson and his wife, Mrs. M. W. Johnson, in the sum of $321.55, with a foreclosure of lien on the same property, with provision for execution over to satisfy any deficit that might remain after sale of the property; and judgment in favor of McAllister & Sides personally against both M. W. Johnson and his wife, Mrs. M. W. Johnson, for the sum of $2,132.45; and for costs of suit against the defendants M. W. Johnson and Mrs. M. W. Johnson. Defendants' motion for new trial having been overruled, they excepted to the ruling and prosecuted error to this court.

Error is assigned to the court's action in permitting the witness F. C. McAllister to testify, over the objection of the defendants, that the lumber and material furnished for the erection of the house was according to the specifications and provisions of the contract. The proposition presented is that the contract being in writing, and the lumber and material being specified, the character and quality stipulated in the original specifications which were a part of the contract, it was error to permit the witness to testify to the conclusion that the material was in accordance with the specifications. He should have been restricted to a description of the character of the lumber and material used.

While the witness L. C. McAllister, one of the contractors, was on the stand, the following question was asked by plaintiff's counsel: "I will ask you to state whether or not the lumber and material furnished for the erection of Mrs. Bounds' residence was, or was not, according to specifications and according to the provisions of the contract?" To this question the defendants objected, because it was incompetent, leading, and called for the conclusion and opinion of the witness. The objection was overruled. The witness answered: "Yes, sir; I think that lumber comes up to specifications; it is as good lumber as I ever saw." There was no error in admitting this testimony. This witness had previously testified: "I have been in the contracting business some 12 or 15 years, and have been handling and using and making up lumber in the contracting business ever since I have worked at the business, and even before I commenced contracting. I don't know that I can tell so much about the different grades of lumber; as they change so much at the mill that a person can't hardly keep up with it; I can tell a piece of lumber when I see it, and can tell whether it comes within certain specifications as to grade, and can read and understand a contract in reference to a building like this." This testimony showed the witness was an expert; and being an expert he could give his opinion as to the quality of the lumber which was used in the construction of the house and state that it complied with the specifications. The witness was one of the contractors and was familiar with the lumber that went into the house. Stark Grain Co. v. Harry Bros., 122 S. W. 950; Dallas Homestead Ass'n v. Thomas, 36 Tex. Civ. App. 268, 81 S. W. 1041. Again, other testimony of the same character was admitted without objection thereto.

The witness J. M. Sides, one of the contractors, testified that he superintended the work, and it was according to the plans and specifications; that he was acquainted with the kinds of lumber, and all of the lumber that went into this building was good. In selecting the kind and quantity of lumber as the building went up, he referred to the plans, and the orders for lumber were made in accordance with the plans and sent to the lumbermen, and it came back what he ordered. The lumber that went into the house was all right. All the lumber that went into the building was of the regular standard size for its kind. The witness Rowe testified: "I watched the progress of the work. I also signed the final estimate. As an architect, the job was finally accepted by me as satisfactory. There was no complaint made to me by Mrs. Bounds and Mr. Johnson other than the allowance I made at the time, and I talked with Mr. Johnson and asked him to take up what objections he had. I have had experience which enables me to judge of the character and quantities of material that enter into buildings." James D. Padgett testified that, "all the lumber that was used while I was there was first-class lumber."

Error is assigned to permitting the witnesses D. H. McCreight, Ed. Beckham, and T. C. Smith to testify with reference to the service of a copy of account on M. W. Johnson, for Mrs. M. W. Johnson, and in permitting the introduction in evidence of the copy of account. The land upon which the lien was sought was the separate property of Mrs. M. W. Johnson, and the contract was entered into by her while she was a feme sole, and subsequent to the execution of said contract she intermarried with M. W. Johnson, and was at the date the lien was sought to be fixed upon her separate property and homestead. The evidence showed that Sumner & McCreight served notice of their claim and bill of particulars on M. W. Johnson and Mrs. M. W. Johnson, claiming a mechanic's lien and requesting them to hold back money due McAllister & Sides on the contract to pay the same. The notice was served on M. W. Johnson in person. When

the party delivered the notice to him, he was told by the party serving the notice that he had a copy for Mrs. Johnson. M. W. Johnson replied that he would accept service for his wife, Mrs. Johnson, and did take the copy intended for her. Subsequently Mrs. Johnson admitted that she received said notice, and stated that her husband, M. W. Johnson, was her agent in the matter. Johnson and Mrs. Johnson did hold back money as per the request. There was no error in admitting the testimony of Mrs. Johnson that she had received said notice from Mr. McCreight, or in the admission of her statement that her husband was acting as her agent in the matter. Service of the notice of the bill of particulars on Mrs. Johnson was necessary to fix the mechanic's lien on her separate property and homestead, and her admission of the receipt of such notice was sufficient. Revised Stats. arts. 3294, 3295, 3296, 3305, 3306, 3307; Horan v. Frank, 51 Tex. 401; Pool v. Sanford, 52 Tex. 622; Fullenwider v. Longmoor, 73 Tex. 481, 11 S. W. 500. The lien is given by statute, and when the steps prescribed by the statute are followed the lien attaches. Sens v. Trentune, 54 Tex. 218; Lee v. Phelps, 54 Tex. 367.

There was no error in permitting the witness J. R. Welch to testify to an agreement between himself and the architect to the use of a different paint than that stipulated in the contract. J. R. Welch testified that he used Harrison paint at the instance and under the direction of the architect. The contract for the building of the house states that the architect is the agent of the owner, and that should any alterations be required in the work it should be ordered by the architect. The law requires that there shall be a substantial compliance with the terms of a building contract. The contract stipulating that the architect Rowe is the agent of the owner, he, as agent, was authorized to consent for the owner to the use of Harrison paint in place of Sherwin-Williams paint; the evidence showing that those paints were of the same quality.

The fourth, fifth, and sixth assignments of error complain of the court's action in sustaining exceptions to certain questions propounded to Mr. Johnson by his attorneys and excluding his testimony. M. W. Johnson, while testifying in his own behalf, was asked: "What would it cost you to jack up that house and take all of the sags out of it—both upstairs and downstairs—and properly support it with piers so as to make the foundation as good as it would have been, had it been built in accordance with the plans and specifications?" This question was excepted to on the ground that the witness had not qualified himself to give his opinion and testify as to the value of said work. Had he been permitted, he would have answered, $1,000. Again, he was asked: "What would it cost you to take out the defective flooring and relay it it, so as to make it as good as it would have been if constructed in accordance with the plans and specifications of that building?" The same objection was made and sustained to this question. The witness, had he been permitted, would have answered $500. The witness was then asked: "If that house—the whole house—had been constructed in accordance with the plans and specifications and completed in every respect as provided for in the plans and specifications and contract, what would have been the reasonable market value of it?" This was excepted to on the same ground, the exception sustained, and the evidence excluded. Had he been permitted, the witness would have answered, $8,300; that as constructed it was of the market value of $5,795.

The witness had not qualified as an expert, and it is not shown that he had any experience or knowledge of the facts inquired about. It was not shown that he had made inquiry and ascertained from contractors or others the price he would have to pay for such work. The true rule in reference to the admission in evidence of the opinions of witnesses not shown to be experts is laid down by Judge Garrett in the case of G. C. & S. F. Ry. Co. v. Hepner, 83 Tex. 140, 18 S. W. 442, thus: "Opinions of witnesses may be given in evidence, although they are not experts in the particular science about the matter of inquiry, if the witnesses give at same time the facts about which their opinions are based, but in order to render such evidence competent the facts must appear to be such as would enable them to arrive at an intelligent opinion with respect to the subject." See, also, Railway v. Klaus, 64 Tex. 293; Half-Weiss & Co. v. Curtis, 68 Tex. 642, 5 S. W. 451; Railway v. Brousard, 69 Tex. 622, 7 S. W. 374; Bridge Co. v. Cartrett, 75 Tex. 629, 13 S. W. 8; Mining Co. v. Fraser, 130 U. S. 620, 9 Sup. Ct. 665, 32 L. Ed. 1031. The evidence of the witness Johnson failed to bring his testimony within the rule announced. He did not state facts sufficient to enable him to arrive at an intelligent opinion as to the matters inquired about.

The seventh, eighth, and ninth assignments complain of certain special issues submitted to the jury. We are of the opinion that these issues are not subject to the criticisms made in these assignments. The answers to the special issues were supported by the evidence, and the verdict authorized the judgment in favor of Griffiths & Co.; also the judgment in favor of Sumner & McCreight, foreclosing their lien.

It was, however, error for the judgment to give the plaintiff, Griffiths & Co., and McAllister & Sides and Sumner & McCreight each a personal judgment and recovery against M. W. Johnson. The undisputed proof shows that Mrs. M. W. Johnson contracted the debt sued on prior to her marriage with this plaintiff in error, M. W.

Johnson, and such indebtedness was for the benefit of her own separate estate, and was her separate and individual debt, for which this plaintiff in error, M. W. Johnson, who subsequently intermarried with her, was not, and is not, personally liable. Nash v. George, 6 Tex. 234.

The judgment will be reformed so as to release M. W. Johnson from personal liability on the same. As reformed the same is affirmed. The costs on appeal will be taxed against plaintiff in error, as it is clear that, had the trial court's attention been called to this error in the judgment, it would have been reformed in that court.

Reformed and affirmed.